IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ROY CHAMBERLAIN,           § | |
| Plaintiff,           § | |
| § | |
| v.           § | CA 7:04-CV-0190-AH |
| § | |
| COMMISSIONER OF SOCIAL           § | |
| SECURITY,           § | |
| Defendant.           § | |

MEMORANDUM OPINION AND ORDER

Pursuant to the written consents of the parties to proceed before a United States Magistrate Judge and the District Court's Transfer Order filed on January 12, 2005 in accordance with the provisions of 28 U.S.C. § 636(c), came on to be considered Plaintiff Roy Chamberlain's action brought under 42 U.S.C. § 405(g) seeking judicial review of the Defendant's denial of Plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423.

Procedural History: On April 9, 2001, the Plaintiff filed his application for Social Security benefits alleging disability since February 1, 2000, due to inability to walk and stay on his legs. (Administrative Record ("Tr.") 59, 79.)  His insured status ended on December 31, 2001. (Tr. 62.)

The Administrative Law Judge ("ALJ") conducted a hearing on October 1, 2003. (Tr. 187). On February 24, 2004, the ALJ denied the Plaintiff's request for supplemental security income benefits finding that the Plaintiff had the residual ability to perform a wide range of light and sedentary work. (*Id.* at 11, 24). The Plaintiff timely requested review of the ALJ's decision by the Appeals Council, and on September 10, 2004, the Appeals Council denied his request. (*Id.* at 4). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

The Plaintiff filed his complaint on September 18, 2004 and his supporting brief on February 16, 2005. The Commissioner filed her brief on April 15, 2005. Chamberlain did not file a reply brief.

<u>Standard of Review--Social Security</u>: In a Social Security case, the scope of judicial review is limited to a determination of whether the ALJ's decision to deny benefits is (1) supported by substantial evidence and (2) whether the proper legal standard was applied. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997) (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)).

Substantial evidence means more than a scintilla, but less than a preponderance. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It is defined as relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).

In determining whether substantial evidence exists, the court does not reweigh the evidence, retry the issues, or substitute its own judgment. *Id.* (citing *Haywood*, 888 F.2d at 1466); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Rather, this court reviews the ALJ's legal conclusions *de novo* and ensures that the correct legal standard was utilized by the administrative court.

The Commissioner's decision is granted great deference. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Accordingly, the absence of substantial evidence will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Findings of fact which are supported by substantial evidence are conclusive. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

<u>Discussion</u>: To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him from engaging in any

2

substantial gainful activity. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (citing 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A)).[1]  In determining whether a claimant can engage in substantial gainful activity, the Commissioner uses a five-step sequential inquiry. *E.g., Martinez,* 64 F.3d at 173-74. Under the first four steps, a claimant has the burden of proving disability, but under the fifth step, i.e. when a claimant is unable to perform his previous work, the burden shifts to the Commissioner to prove that there is other substantial gainful activity which he can perform. *E.g., Bowen v. Yuckert*, 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan,* 887 F.2d 630, 632-33 (5th Cir. 1989).  Although the ALJ found that Plaintiff was unable to perform his past relevant work, the ALJ further found that he had the residual capacity to perform a wide range of light and sedentary work, and therefore was not disabled under step five of the sequential inquiry. (Tr. 23-24.)

The documents contained in the administrative record reflect the following chronology of pertinent medical care: On August 22, 2000, Plaintiff saw Dr. Stephen D. Ruyle, M.D., complaining of pain in his ankle.[2]  After examining X-rays, which were wholly unremarkable, Dr. Ruyle could find no basis for Plaintiff's ankle pain, but noted that his Achilles area was really sore. (Tr. 166.)

---

[1] Since Chamberlain's insured status terminated on December 31, 2001, (Tr. 23) the relevant inquiry is whether he had the ability to engage in substantial gainful activity on or before that date.

[2] The doctor's notes do not indicate which ankle was affected, and the court assumes that it was his left.

On September 11, 2000 Plaintiff complained that his left ankle was so painful that it made him sick to his stomach and that Vioxx did not help. Dr. Rulye diagnosed a possible stress fracture, ordered Plaintiff to stay off his foot, and ordered a bone scan. (Tr. 166).

On September 20, 2000 radiologist Paul L. Bice M.D. performed a limited bone scan on Chamberlain. He found moderate uptake in the mid left tibia and marked uptake in the distal left tibia and calcaneal[3] region. He noted that the moderate uptake in the mid one third of the left tibia did not correspond with the previous surgery and recommended a plain film correlation. (Tr. 160). On the same day he performed three views of the Plaintiff's left ankle. They demonstrated a previous left tibia and fibula fracture with open reduction and internal fixation with three orthopaedic screws fixating the distal tibia and fibula with fusion obtained. An additional open reduction and internal fixation with two orthopedic screws fixing a calcaneal fracture was noted. Arthrodesis[4] with fusion was noted as well. (*Id.* at 161). On the same date, he took two views of the left tibia and fibula which showed vague sclerosis in the left tibia, which was possibly secondary to a stress fracture or a stress reaction. (*Id.* at 162).

On September 21, 2000, Chamberlain's wife called Dr. Ruyle to report that he was upset because he was not hospitalized with "a broken bone." The doctor in turn explained that the stress fracture had nothing to do with his ankle fusion. Dr. Ruyle recommended that the Plaintiff stay completely non-weight-bearing and on crutches.[5] (Tr. 158.)

---

[3]The quadrangular bone at the back of the tarsus, also called the heel bone. Dictionary.com *at* http://dictionary.reference.com/search?q=calcaneal.

[4]The surgical fixation of a joint ultimately resulting in bone fusion. Dictionary.com *at* http://dictionary.reference.com/search?q=Arthrodesis.

[5]Presumably until the stress fracture healed.

4

On April 11, 2001 Plaintiff reported to Dr. Ruyle that his stress fracture was resolved and that he really was not having very much trouble getting around on it. He reported that his left ankle was not bothering him. (Tr. 158).

On October 16, 2001 Dr. E. R. Chandler, M.D., examined Chandler at the request of the Texas Rehabilitation Commission. Plaintiff reported that his pain level was 7 on a bad day, but not so high on other days. He could walk the length of his shop approximately twice before he has to stop and rest, and he walked without a limp and without the aid of a cane or crutch. Plaintiff also reported that his left leg was 2 centimeters shorter than his right leg, which examination confirmed. On examination, Chamberlain was unable to dorsiflex or plantarflex his ankles or to invert and evert his feet. An X-ray evaluation revealed that the Plaintiff had multiple screws in his left ankle, bone graft with fusion of the left ankle, and nonunion of the distal left fibula. Dr. Chandler diagnosed Chamberlain with, among other things, osteoarthritis of the ankle with fusion of the ankle and failed union of the left fibula with severe pain. (Tr. 167-69.) On the same date, Dr. Robert Neal, M.D., evaluated X-rays of Plaintiff's ankle. He saw five orthopedic screws in Chamberlain's ankle. He noted that bony ankylosis or fusion was thought to be present at the ankle mortis joint with loss of the joint space. He also noted an old fracture across the distal shaft of the fibula and opined that non-union might be present. His impression was "[a]pparent fusion is demonstrated at the ankle with orthopedic screws across the distal fibula, tibia, and talus." (Tr. 171).

On November 15, 2001, Dr. Jimmy L. Breazeale, M.D., received Plaintiff's medical records and completed a Residual Functional Capacity Assessment. In it, he found that the Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours of an 8 hour workday, sit about 6 hours of an 8 hour workday, and that his ability to push and pull was unlimited.

5

He opined that Chamberlain could frequently stoop' occasionally climb ramps, stairs, or ladders; kneel; crouch; or crawl; and could never climb ropes or scaffolding. He found no manipulative limitations, no visual limitations, and no communicative limitations. He further found that the Plaintiff could tolerate unlimited heat, cold, wetness, humidity, noise, and vibration, but should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and hazards. In his written evaluation, Dr. Breazeale noted that Plaintiff had a history of arthritis, an extensive history of bone fractures, and fused ankles. He also noted that Plaintiff walked without a limp and did not need the assistance of ambulatory devices. He stated that his Residual Functional Capacity Assessment took into account Chamberlain's allegations of pain and that the Plaintiff's alleged limitations were not fully supported by the medical and other evidence in the file. (Tr. 172-79).

On September 26, 2002 Dr. Paul J. Parkey, M.D. filled out a Medical Assessment of Ability to Do Work Related Activities (Physical). In it he stated that the Plaintiff's abilities to lift and carry were affected by various surgeries, including that which fused Chamberlain's ankle, such that he could only occasionally lift or carry up to ten pounds. He found that the Plaintiff could not stand during a normal workday for the same reasons. He found that Chamberlain could not sit during an eight hour workday because of probable degenerative joint disease and pain in the Plaintiff's back and lower extremities. He opined that Plaintiff could never climb, balance, stoop, crawl, kneel, or crouch, and that while he had no impairments in reaching, handing, feeling, seeing, hearing, or speaking, his impairments did affect his ability to push and to pull. He found environmental restrictions, but noted that they were due to the Plaintiff's C.O.P.D. (Tr. 136-37).

On October 15, 2003, Dr. Parkey, wrote a "To Whom It May Concern" letter noting that Chamberlain had been a patient of the Downtown Medical Clinic in Wichita Falls, Texas since

6

September of 2000 and that he had known Chamberlain since the mid-1980's.  He opined that Plaintiff's condition had degenerated over the years and that Chamberlain was unable to work "due to bilateral leg pain and respiratory difficulties."  Dr. Parkey stated that Plaintiff's left ankle was fused in 1990 and that Chamberlain reported continued pain and some difficulty in ambulation due to the fusion.  (Tr. 182).

Plaintiff testified on his own behalf at the hearing conduced by the ALJ.  He testified in pertinent part that he had dropped out of high school before he finished the tenth grade.  His prior job was as a mechanic in an automobile shop which he and his wife owned.  He testified that Dr. Ruyle had fused his left ankle sometime in 2000.  He could stand for 10 or 15 minutes, then his feet and back began to hurt.  To alleviate the pain, he had to lie down for 10 or fifteen minutes.  He could walk several hundred feet with the use of a cane, but he would then have to sit and rest because of the pain in his legs.  He was in constant pain, even while sitting.  He took Lortab[6] for pain.  (Tr. 188-204).  Plaintiff's wife, Vicki Chamberlain, testified that he had ceased work around the end of 2000 or the beginning of 2001.  He would still occasionally visit the shop, but he did not do any work there.  Over the previous four years, Plaintiff had suffered degeneration in his feet and legs such that he was no longer able to perform the duties of a mechanic at their shop.  (*Id.* at 205-09).  A vocational expert ("VE") testified at the hearing as to the light and sedentary jobs that he opined that the Plaintiff could still perform.  (*Id.* at 209-16).

---

[6]The combination of acetaminophen and hydrocodone, used to relieve moderate to moderately severe pain.  Medline Plus *at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601006.html.

In his sole ground for relief, Chamberlain alleges that the ALJ erred when she found that substantial evidence did not support the finding that his left ankle impairment did not meet the criteria of 20 C.F.R Pt. 404, Subpt. P, Appx. 1 § 1.02.

In accordance with the five-step sequential inquiry, "if a claimant is found to be either disabled or not disabled at any point in the process, no further review is necessary." *Herron v. Bowen*, 788 F.2d 1127, 1131 (5th Cir. 1986). If no determination is made under a preceding step, the ALJ proceeds to the next step. *See Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). Chamberlain's ground relates to the third step, i.e. whether his impairments meet or equal an impairment listed in the appendix to the regulations. *See Martinez v. Chater*, 64 F.3d at 173-74. Thus, the issue presented for review is whether there is substantial evidence in the record to support the ALJ's determination that Plaintiff failed to establish that he was disabled under step three on or before the date on which he was last insured.

The relevant listing pertains to major dysfunctions of the joints. A major dysfunction of a joint under §1.02A must be caused by a "gross anatomical deformity" and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint. In addition, there must be involvement of one major weight bearing joint resulting in the inability to ambulate effectively.

Defendant contends that the Plaintiff does not have a "gross anatomical deformity" as required by the Listing. However, the listing defines "bony or fibrous ankylosis" as an example of "gross anatomical deformity." § 1.02. The ALJ found that Chamberlain had a left ankle fusion (Tr. 23) and the record supports this finding. (*E.g. id.* at 167-69, 171). Thus the only question is

8

whether the Plaintiff retained the capacity to ambulate effectively, as defined in 20 C.F.R Pt. 404, Subpt. P, Appx. 1 § 1.00B2b.

Chamberlain contends that there was substantial evidence that he was unable to ambulate effectively. "Inability to ambulate effectively means an extreme limitation of the ability to walk." §1.00B2b. The record does not reflect substantial evidence that the Plaintiff did not have this ability. On September 15, 2001, Dr. Breazeale opined that Chamberlain could stand and/or walk for six hours out of an eight hour day. (Tr. 172-179). Although Dr. Parkey opined that the Plaintiff was disabled and unable to sit or stand long enough to be employable (*Id.* at 136-37) and he also stated that Chamberlain "has some difficulty ambulating due to the fusion [of his left ankle]" (*id.* at 182); these observations and opinions post-dated his last insured date by many months. Therefore, there is substantial evidence to support the ALJ's determination that Plaintiff's left ankle impairment did not result in an inability to ambulate effectively.

Plaintiff contends that the ALJ erred in her determination of his credibility. An ALJ's assessment of a Plaintiff's credibility is given great deference. *E.g. Newton*, 209 F.3d at 459. In addition, Chamberlain has not shown how the ALJ's errors in determining credibility, if any, prejudiced him with regard to the listing. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir.1996) ("[A court] will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."). The fact that the ALJ–in her prerogative to determine the credibility of the evidence–declined to make findings which were wholly favorable to Chamberlain fails to establish prejudice.

Therefore, because substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or exceed Listing 1.02 and there is substantial evidence to support the

9

ALJ's decision, the decision of the Commissioner must be affirmed and Plaintiff's complaint will be dismissed with prejudice.

SIGNED this 11th day of October, 2005.

_____
Wm. F. Sanderson, Jr.
UNITED STATES MAGISTRATE JUDGE